**TRAVELERS RENTAL CO., INC.,**
**d/b/a Dollar Rent a Car,**

v.

**FORD MOTOR COMPANY, Hertz**
**Rental Car, Avis Rental Car.**

**Civ. A. No. 84–2320–WD.**

United States District Court,
D. Massachusetts.

June 8, 1987.

Edward R. Wiest, Robert J. Baum, Bradley, Barry & Tarlow, Boston, Mass., for Travelers Rental Co., Inc.

Thayer Fremont-Smith, Choate, Hall & Stewart, Boston, Mass., for Ford Motor Co.

Philip G. Koenig, Dike Bronstein Roberts, Cushman & Pfund, Boston, Mass., for Hertz Corp.

Zachary R. Karol, Bingham, Dana & Gould, Boston, Mass., for Avis Rental Car.

## MEMORANDUM AND ORDER ON MOTION TO COMPEL PRODUCTION OF WITNESSES BY FORD MOTOR COMPANY (# 136)

ROBERT B. COLLINGS, United States Magistrate.

In its complaint, Travelers alleges that Ford violated the Sherman Act, 15 U.S.C. § 1 and the Robinson-Patman Act, 15 U.S.C. § 13 in connection with its "guaranteed resale value" incentive program which it offered in 1981 to Travelers' competitors, Hertz and Avis, but did not offer to Travelers. The program involved Ford entering into agreements with Hertz and Avis to set minimum acceptable prices for the resale at auction of 1981 model cars sold under the program. Travelers contends that these incentive programs effectively reduced the price of 1981 model year Ford and Lincoln-Mercury vehicles by "guaranteeing" to Hertz and Avis that they would get a certain price when they disposed of the Ford and Lincoln-Mercury vehicles which they purchased for use as rental cars during that model year.

The principal issue now before the Court is whether the plaintiff is entitled to notice and take the depositions of several high-level executives at the Ford Motor Company. Specifically, the plaintiff seeks to depose H.A. Poling, President of Ford Motor Company, P.E. Benton, Jr., Executive Vice-President of Ford International Automotive Operations, J.A. Kordick, General Manager of the Parts and Services Division of Ford, and B.S. Restuccia, Marketing Services Director of Ford's North American Automotive Operations Division.

Travelers first noticed these depositions in December, 1986. Ford moved to quash or modify the notices. After a hearing, it was agreed that the plaintiff would first depose five officials of Ford who were not

as high on the corporate ladder as Messrs. Poling, Benton, Kordick and Restuccia and then reassess its need to take the depositions of the four higher-level executives. After completing the depositions, Travelers asserted that it still needed the depositions of the four higher-level executives and re-noticed their depositions. When Ford responded that it would not produce the four executives voluntarily, Travelers filed its motion to compel. The Court heard the motion on May 21, 1987.

Ford claims that plaintiff's motion to compel further depositions "is interposed solely for the purpose of harassment and oppression, and not because the additional depositions are reasonably calculated to lead to the discovery of admissible evidence." Defendant's Memorandum, Etc. (# 141) at p. 1. Rule 26(b)(1), F.R.Civ.P., provides that discovery is permitted regarding any matter "which is relevant to the subject matter involved in the pending action" and may be used to obtain information which "appears reasonably calculated to lead to the discovery of admissible evidence." If the discovery in the form of the depositions of these four executives does not meet that standard, the notices must be quashed.

Ford's claim that the depositions are interposed solely for the purpose of harassment and oppression is contradicted in large measure by Travelers' presentation outlining the connections between the four executives and the evidence and issues in this lawsuit. Ford draws the court's attention to language in cases which indicates that corporate officials are not always required to submit to depositions. However, in the case of *Hughes v. General Motors Corp.*, 18 F.R.Serv.2d 1249 (S.D.N.Y., 1974), the Court ruled, in language quoted in Ford's Memorandum, Etc. (# 142) at p. 5, that "[n]o good cause exists to require defendant to submit its president for a deposition *when it is clear* that the information which plaintiff wants is available through other employees." (emphasis supplied) *Id.* at 1250. Travelers' presentation on the need to depose the four witnesses indicates that it is not clear that all information is available and/or has already been obtained from other sources.

The plain fact is that Travelers is exploring Ford's motive in implementing and administering the guaranteed resale plan. The evidence respecting motive is solely within Ford's control. When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action. Thus, the plaintiff in this case is entitled to depose those corporate officials of Ford who approved and/or administered the plan.

With this background in mind, the involvement of each of the four executives with the programs at issue in this case will be scrutinized.

■ In March, 1981, Mr. Benton was the author of a memorandum, a copy of which was sent to Mr. Poling, responding to a question asked about "the status of our special proposal to Hertz." Exhibit 3 to Opposition, etc. (# 133). Mr. Benton speaks of the "proposal which Ford Division has developed for Hertz" which involves the disposal of the cars "through the auction disposal system" and Ford's "guarantee that Hertz depreciation would not exceed a fixed monthly amount for each car line thus providing the no risk conditions which Hertz requires." The deposition of Richard Ellis discloses that Mr. Benton had authority to approve new programs during the relevant time period. Deposition of Richard Ellis at pp. 12–13 (attached to Motion, Etc. [# 136]). Mr. Benton also concurred in the recommendation to implement a 1982 program; it can readily be inferred that his concurrence was based on his evaluation of the 1981 program. Exhibit 2 to Opposition, Etc. (# 133). In addition, Mr. Benton was the addressee and presumably recipient of a memorandum signed by Mr. Kordick dated April, 1983 transmitting an eight page report which constituted a comprehensive review and evaluation of Ford's fleet disposal programs since 1981. Surely this report

was not prepared for Mr. Benton because he lacked adequate material for leisure reading. It is entirely reasonable to infer that the purpose of sending the report to Mr. Benton was for him to make decisions respecting the programs. On this record, the plaintiff is entitled to depose him.

■ Mr. Poling is now President of Ford; however, at the time he was a Vice-President in charge of Ford's North American operations. He received a copy of Mr. Benton's March, 1981 memorandum, as indicated *supra*. In addition, he was the addressee of a four page letter (with attachments comprising eighteen pages) dated January 20, 1982, the stated purpose of which was "to request your approval for a 1982 Model Spring Daily Rental Program." Exhibit 2 to Opposition, Etc. (# 133). Mr. Poling signed the last page of the document granting the requested approval. The document makes clear that the recommendation for a 1982 program was based, in part, on the experience with the 1981 program. In short, Mr. Poling was the representative of Ford who made the decision to proceed with the 1982 program; he may be deposed respecting his evaluation of the 1981 program and Ford's motivation for continuing the program in 1982.

■ Mr. Restuccia was the addressee and presumable recipient of an October 5, 1981 memorandum from a Mr. Blank referencing "... several discussions we have held recently regarding the return and auction of approximately 7,000 Hertz (sic) during the October, 1981–April, 1982 period." The deposition references cited by the plaintiff support the inference that Mr. Restuccia was significantly involved in the administration and implementation of that portion of the 1981 program which involved the resale of the automobiles which had been sold under the program. He may be deposed.

■ As indicated *supra*, Mr. Kordick signed the letter dated April, 1983 to Mr. Benton transmitting the review of the company's fleet disposal programs. His letter states that "[w]e have reviewed the Compa-

ny's experience in the disposal of guaranteed resale value vehicles owned by independent daily rental companies." He further speaks of the "findings" and conclusions reached. He concludes that "[d]uring the Fleet Strategy meetings scheduled with you over the next several weeks, the concepts as reviewed in this paper may come under further discussion." Exhibit B to Opposition, Etc. (# 133). This is a sufficient basis for permitting the plaintiff to depose Mr. Kordick.

■ Ford responds to plaintiff's recital of facts indicating the involvement of these four persons in the resale program with "know nothing" affidavits of each. Perhaps they could better be described as "remember nothing" affidavits. In the face of the showing made by the plaintiff, they are plainly insufficient to support a motion to quash. The plaintiff is entitled to "test" the claim of lack of knowledge or lack of recollection by deposing the witness. *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 121–23 (D.Conn., 1974) citing *Parkhurst v. King*, 266 F.Supp. 780 (E.D. Pa., 1967). In fact, the ability to "test" is even more important in the case of a claimed lack of recollection than lack of knowledge, since recollection can frequently be refreshed during an examination. In addition, the extent to which failures of recollection can be refreshed very often depends on who the refresher is. It is very easy to claim a lack of recollection. There is nothing in the affidavits of the four individuals which indicate that they attempted to refresh their recollections at all or that any effort was made by Ford's counsel to refresh their recollections. Even if there were such a showing, there is nothing in the law which would indicate that Travelers has to accept the claimed failures on their face or rely on whatever efforts Ford's counsel may have undertaken to refresh recollections. Considering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the dep-

osition. The only possible instance I can think of would be the situation in which the failure of recollection was due to disease or an organic deficiency of some sort, neither of which is claimed in the instant case.

Lastly, the lack of knowledge claimed by these high executives may, in and of itself, be relevant evidence. It is not beyond the realm of possibility that a corporation, when engaging in potentially illegal activities, would act in such a way as to make it seem that top executives had no knowledge or very limited knowledge of the allegedly illegal activities. Needless to say, I do not intimate that that is what occurred in this case, but the possibility lends weight to my conclusion that it would be improper for the Court to require that Travelers accept these officials' affidavits of limited knowledge and virtually no recollection at face value with no opportunity for testing at depositions.

The defendant's Memorandum, Etc. (#142) at p. 5 has drawn the Court's attention to a number of decisions which purport to support Ford's contention that the four officials should not be subjected to depositions in this case. These cases all involve instances in which courts have denied the effort by a party to depose a high corporate official of a corporate party. However, a careful reading of the cases reveals that each case is readily distinguishable from the instant case or that the court's opinion does not, in fact, support Ford's position.

In *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I., 1985), the plaintiffs, who were seeking damages for personal injuries from the alleged defective design of a 1975 Dodge van, noticed the deposition of Lee Iacocca, Chrysler's chairman. The basis for noticing Mr. Iacocca's deposition was that "... in his published biography, [he] made certain damaging statements relevant to the defendant's liability." *Id.* at 365. In response, Mr. Iacocca signed an affidavit "... professing ignorance to the information plaintiffs seek." *Id.* at 366. However, the court noted that Mr. Iacocca's "generalized damaging statements

concerning Chrysler's former practices ... warrant refining through discovery inquiry." *Id.* In resolving the issue, the Court noted that "... if Mr. Iacocca has any information, albeit inadmissible as evidence *reasonably* calculated to lead to the discovery of admissible evidence, he must be required to reveal the information" and that "[h]is prestigious position is an unimpressive paper barrier shielding him from the judicial process." (Emphasis in original) *Id.* However, the Court noted that because of his position, Mr. Iacocca "... can easily be subjected to unwarranted harassment and abuse." *Id.* Therefore, the Court permitted the plaintiffs to direct interrogatories to Mr. Iacocca in the first instance, leaving open the possibility that a deposition could possibly be taken at a later time if the interrogatory answers were inadequate. *See also Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 518 (D.Conn., 1961).

In the instant case, as noted *supra*, the four executives profess more a failure of recollection rather than a lack of knowledge. Forms of discovery other than a deposition are ill-suited to probe a failure of recollection and to effectuate a refreshing of failed recollection. In addition, Travelers has made a showing of personal involvement in the implementation and administration of the various resale plans. In short, the facts of the instant case are quite different from the facts of *Mulvey;* applying the principles set forth in *Mulvey* to the facts of the instant case results in the conclusion that the four depositions should go forward.

Ford also cites with approval the case of *Salter v. Upjohn Co.*, 593 F.2d 649 (5 Cir., 1979). In that case, the District Judge refused to allow the plaintiff to take the deposition of Upjohn's president. The Court of Appeals noted that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id.* at 651 (citations omitted). The District Court required the plaintiff to take the deposition of other

corporate employees whom Upjohn asserted were knowledgeable. The Court of Appeals approved of this procedure but noted that "[o]f course, if after taking the other depositions, plaintiff was not satisfied and again properly gave notice of or requested taking [the corporate president's] deposition, the judge should probably have allowed the deposition." *Id.* The problem was that the plaintiff's later attempts to depose the president were barred for procedural reasons.

Ford's reliance on the case of *Skookum Co. v. Sutherlin Machine Works, Inc.*, 33 F.R.D. 19 (D.Ore., 1963) is similarly misplaced. In that case, the deposition of the president of one of the plaintiffs which had been noticed by the defendant was prevented because the executive was a titular president with no management responsibilities. In addition, he had been travelling in Europe for three and one-half years, no one knew when he might return, and therefore was out of the plaintiff's control and unavailable for deposition. Furthermore, the court made clear that if the corporate executive became available, he must appear for the deposition emphasizing that "it goes without saying that should [the president] appear within this District and become available as a witness ... the plaintiffs will be bound to ... make [him] available to defendants for deposition purposes. *Id.* at 21.

In another case cited by the defendant, i.e. *Armstrong Cork Co. v. Niagara Mohawk Power Corp.*, 16 F.R.D. 389 (S.D. N.Y., 1954), the court disallowed a "shotgun" deposition notice of nine officers and six directors of a corporation, including one deceased official. The court noted that the "[d]efendant does not appear to dispute [the] assertion" that "none of those noticed has any knowledge of the facts relating to the matters in controversy." *Id.* at 390. This fact distinguishes the case from the instant one wherein Travelers has specified connections between these witnesses and the program at issue in the litigation.

Lastly, the case of *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383 (S.D.N.Y.,

1951) is but one of a number of cases which permit deferment of the depositions of higher executives until subordinates with supposedly equal or greater knowledge have been deposed. That process has already taken place in this case.

In sum, on the record before the Court in this case, the cases cited support Travelers' contention that the depositions should be allowed to go forward.

■ Ford, however, asks the Court to invoke its power under the second paragraph of Rule 26(b)(1), F.R.Civ.P. which reads, in pertinent part, as follows:

> The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

Ford's position is set forth as follows:

> Ford respectfully submits that the discovery sought by the plaintiff in this case long ago passed the point of being unreasonably cumulative and duplicative. The plaintiff has deposed numerous witnesses on the same points, after first deposing those with the most knowledge ... It is hard to imagine a less convenient, more burdensome or more expensive discovery procedure than to depose the president and other high level executives of Ford, who clearly are not the most knowledgeable or directly responsible in the areas of purported inquiry, and where the information has been obtained from those who are.

Memorandum, Etc. (# 142) at p. 4.

I agree with Ford that the discovery is somewhat duplicative and cumulative, but because of the nature of the inquiry at issue, I do not believe that the discovery is *unreasonably* so. It is to be recalled that one of the reasons Travelers wants these depositions is to explore Ford's motive and intent in instituting and administering the plan and each of the four officials whose

depositions are sought was a participant in those endeavors. Lower-level executives may have greater knowledge of the manner in which the plan was implemented or administered. The lower-level executives may even have their own views as to why the plan was implemented or administered in a particular way. But those with greater authority may have the last word on why Ford formulated and/or administered the plan in the manner which the lower-level executives described it as being formulated and/or administered. And as the ultimate authority, their views as to why may be of far greater probative value on the issue of intent and motive than the views of the lower-level executives. In short, this is a very different case from the situation where the issue is the design of a particular transmission used in a Ford automobile and where there was no evidence that the higher-level executives had any role in deciding what the design was to be. In such a situation, the depositions of higher-level executives probably would be prohibited on the basis of the second paragraph of Rule 26(b)(1), F.R.Civ.P. If, however, there was evidence that the choice as to which design of a transmission system was to be placed in a particular model automobile was made by higher level executives, the depositions would probably be permitted.

This is not to say that Ford's assertions that the higher-level executives merely followed the recommendations of the lower-level executives and approved the implementation and administration of the plan for only the reasons which were asserted by their subordinates are necessarily untrue. In fact, I daresay that Ford's assertions are probably accurate. But that is not a basis for requiring Travelers to accept Ford's assertions as true or for the Court barring any attempt to test whether they are true or not.

In saying this, I do not mean to suggest that tools given to the Court in the second paragraph of Rule 26(b)(1), F.R.Civ.P., are of no utility or should be employed only sparingly. However, the choice as to whether or not to employ the tools must be made on the basis of the facts and circumstances of the particular case. Also, while courts should not be timid in invoking the rule in the appropriate case, it must be borne in mind that in determining what is relevant and what discovery should be taken, considerable deference should be given to counsel's good-faith judgment as to the needs of his case. There is no question but that the court's role in supervision of discovery has been increased substantially, and this is a development which was needed and has been effective in curbing abuses. But the changes have not altered the fundamental principle that the framing of a program for discovery in a case is first the task of counsel for the parties.

In short, I cannot find that the depositions of the four witnesses are unreasonably cumulative or duplicative of other discovery or that they are being noticed in bad faith or for the purposes of harassment or oppression. They are "relevant" as that term is used in Rule 26(b)(1), F.R.Civ.P., and as the term has been defined by the Supreme Court. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Plaintiff's counsel has a factual basis for wanting to depose the four executives, and, in these circumstances, the Court defers to counsel's judgment.

Before leaving this subject, I must note that Ford's counsel has cited the case of *In Re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D.Cal., 1985) as authority for the proposition that I should invoke the second paragraph of Rule 26(b), F.R.Civ.P. and prohibit the four depositions which Travelers seeks to take. I am indebted to Ford's counsel for bringing the case to my attention for in the case, Magistrate Brazil writes a superb explication of counsel's responsibilities under Rule 26, F.R.Civ.P., as the rule now reads. *See* pp. 330–32 in particular. I agree wholeheartedly with his analysis, especially when he notes that in addition to relevance,

> ... counsel *also must* take into account all the circumstances, that the information sought is of sufficient potential sig-

nificance to justify the burden the discovery would impose, that the discovery tool selected is the most efficacious means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought), and that the timing of the probe is sensible, i.e. that there is no other juncture in the pre-trial period where there would be a clearly happier balance between the benefit derived and the burdens imposed by the particular discovery effort.

*Id.* at 331 (emphasis in original)

It should be noted, however, that what Magistrate Brazil is speaking of is what *counsel's* responsibilities are in exercising judgment respecting what discovery to take. I do not think he means to imply that the court should be in a position of second-guessing counsel's judgment except when counsel goes beyond the pale, so to speak, and seeks discovery for which there is no factual basis or which is taken in bad faith or for tactical advantage or solely for the purpose of harassment or oppression. For reasons already stated, I do not think that Travelers' counsel has gone beyond the pale in seeking these four depositions.

Accordingly, the Motion To Compel Production Of Witnesses By Ford Motor Company (# 136) be, and the same hereby is, ALLOWED. Pursuant to Rule 37(a)(2), F.R.Civ.P., the defendant is ORDERED to produce Messrs. Poling, Benton, Restuccia and Kordick for depositions. These depositions shall be taken in Michigan either on the same day or on consecutive days so that counsel for the parties will have to make only one trip to Michigan. The date for the depositions should be set as soon as possible to accomodate the schedules of all involved. The depositions should be completed by August 31, 1987 but I shall not set that as a limit in the event only a date in September will accomodate all involved. Counsel shall notify the court *on or before the close of business on Monday, June 22, 1987* of the date or dates which have been set aside for these depositions. The court will not do any further scheduling with respect to this case until counsel informs the court of the date for the depositions.