**MONSANTO COMPANY, Relator,**

v.

**The Honorable Robert MAY, Respondent.**

**No. D–4382.**

Supreme Court of Texas.

June 8, 1994.

Rehearing Overruled Oct. 6, 1994.

Keith Ellison, Claudia Wilson Frost, John K. Rentz, Houston, James W. Bradford, Angleton, Joe R. Greenhill, Austin, for relator.

Jerry W. Gunn, Ronald D. Krist, Houston, for respondent.

## OPINION ON DENIAL OF LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS

Motion for leave to file petition for writ of mandamus overruled.

ENOCH, J., not sitting.

Justice GONZALEZ, joined by Justice HECHT, dissenting.

This original proceeding involves a motion for protective order from a notice for deposition of Monsanto's chief executive officer. Monsanto requests this Court to direct the trial court to withdraw its order overruling Monsanto's motion for protective order and in its place issue an order sustaining Monsanto's motion. I dissent from today's order denying the mandamus relief requested by Monsanto. By refusing to consider Monsanto's petition, the Court once again ducks this issue which is important to the jurisprudence of the State.

Plaintiffs in "plain vanilla" personal injury and property damage cases continue to seek to depose the highest ranking executives of large corporations as a tactic for pressuring settlement. I believe that when these "apex" depositions are allowed before less intrusive means of discovery have been exhausted, it creates a huge potential for abuse and harassment, and needlessly increases the cost of litigation. I would therefore grant Monsanto leave to file its petition in order to address this recurring problem. Additionally, because I believe that Monsanto has shown that it is entitled to mandamus relief, I would issue a conditional writ of mandamus.

On at least three previous occasions, the apex deposition issue has been before us, but circumstances have precluded our review. We should not forego the present opportunity to set forth some guidelines.

### State Farm Suit

The first opportunity to address this issue came in *State Farm Mutual Automobile Insurance Company v. Dellana* (D–3489). In

---

the suit underlying *State Farm v. Dellana,* Michael Faigen sued State Farm and Edward B. Rust, Jr., State Farm's president and chief executive officer, among others, as a result of State Farm's failure to settle Faigen's claim to Faigen's satisfaction under his uninsured motorist coverage. Faigen alleged that he renewed his State Farm policy in reliance on representations Rust made in a State Farm mail-out that Faigen received, and that State Farm and Rust ratified certain fraudulent behavior undertaken by State Farm adjusters handling his claim. On the same day that Faigen filed suit, he noticed Rust for deposition. Subsequently, suit against Rust was dismissed on a special appearance. State Farm moved for a protective order to quash the deposition of Rust. State Farm attached an affidavit from Rust in which Rust testified that he had no knowledge of Faigen's claim, that he did not direct any person to take any action in Faigen's case, that State Farm has 60,000 employees, and that Rust does not exercise direct supervisory control over claims representatives. The trial court overruled State Farm's motion for protective order.

We granted State Farm's motion for leave to file petition for writ of mandamus. 36 Tex.Sup.Ct.J. 661 (Mar. 24, 1993). After the case was set for oral argument, Faigen withdrew his notice of intent to depose Rust, and moved that the proceeding be dismissed because of mootness. We subsequently dismissed the mandamus proceeding. 36 Tex. Sup.Ct.J. 940 (June 3, 1993).[1]

### Cessna Suit

We next sought to consider the issue in *Cessna v. Chambers* (94–0079). In the suit underlying *Cessna v. Chambers,* the plaintiffs sued Cessna for wrongful death in connection with the crash of a Cessna aircraft. The plaintiffs contended that the carburetor on the aircraft was defective, causing engine failure. They further contended that after Cessna was made aware of the defect by the manufacturer, Cessna failed to timely notify its purchasers of the defect. The plaintiffs noticed the deposition of Russ Meyer, Cessna's chief executive officer and chairman, in Wichita, Kansas, concerning a foreword to an engineering manual entitled "Cessna Business Mission," which was signed by Meyer. The plaintiffs contended that Cessna's delay in issuing a service bulletin concerning the defect was not in compliance with the general goals and commitments set out in Meyer's statement. Although Meyer signed the statement, Cessna contended that he did not author it.

Cessna filed a motion for protective order, arguing that Meyer's deposition is unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Cessna argued that a corporate CEO should not have to appear for oral deposition until less intrusive forms of discovery have indicated that the CEO has personal, non-cumulative knowledge of the case. Cessna stated that at that time it had 221 active cases in the United States and abroad. Unless these types of depositions are restricted, according to Cessna, CEO's could become full-time deponents. The plaintiffs filed a response to Cessna's motion in which they argued that knowledge possessed by Meyer is highly material and relevant. According to the plaintiffs, Ted Moody, Cessna's project engineer and its designated corporate representative, was not able to testify about the meaning of certain language in the statement. After a hearing, the trial court denied Cessna's motion for protective order and ordered Meyer's deposition in Wichita, Kansas, Cessna's principal place of business.

Cessna filed a Request for Reconsideration and Supplement to Cessna's motion for protective order in which it additionally argued that the plaintiffs can obtain information about the statement through less intrusive means. Attached to Cessna's request was an affidavit from Richard L. Warrick, assistant general counsel for Cessna, testifying that according to Warrick's personal inquiries

---

1. I do not believe that Faigen's withdrawal of his notice of deposition necessarily rendered the case moot. *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (recognizing an exception to the "mootness" doctrine when an activity is "capable of repetition yet evading review"). While a case is still pending, there is nothing to stop the plaintiff from filing a new notice of deposition, therefore subjecting the defendant to the same offending activity.

with Meyer, Meyer does not have any personal knowledge of any facts relevant to the allegations in the plaintiffs' complaint. The trial court did not reverse its prior order denying Cessna's motion. Cessna sought mandamus relief in this Court, raising the same arguments as in the courts below. We granted Cessna leave to file its petition and set the proceeding for oral argument. The case settled shortly thereafter, and the parties entered an agreed motion to dismiss which this court granted. 37 Tex.Sup.Ct.J. 818 (June 2, 1994).

### Dupont v. Davidson

The issue was also before us in *DuPont v. Davidson* (D–4494). In the suit underlying *DuPont v. Davidson,* the plaintiffs sued Du-Pont· and others for damages from catastrophic failure of the plumbing systems in their homes. DuPont designed and manufactured a plastic material alleged to have contributed to the damage. In their first request for corporate depositions, the plaintiffs noticed the depositions of the CEO, treasurer, and vice president for technology and operations of DuPont. DuPont filed a motion for protective order seeking to quash the depositions, and in the alternative requesting that the depositions be taken in Delaware, DuPont's headquarters. DuPont's motion was accompanied by affidavits from the parties sought to be deposed asserting that none had knowledge of the relevant facts. After a hearing, the trial court overruled the motion for protective order and ordered the depositions to be taken in Delaware. After a second hearing, the trial court overruled Du-Pont's motion for reconsideration. Dupont filed leave to file petition for writ of mandamus with this court. The case settled while the petition was pending in our court.

### Monsanto Suit

We are again confronted with the issue in the present action. In the suit underlying *Monsanto v. May,* the plaintiff, Denise Baker sued Monsanto and a Monsanto employee alleging that her former direct supervisors committed acts of abuse and sexual harassment. Baker noticed the deposition of Monsanto's chief executive officer, Richard Maho-

ney, to be held in Houston, Texas. Monsanto moved for a protective order to quash the deposition, arguing that the deposition was sought only for the purposes of harassment. Monsanto asserted that Mahoney is involved in the overall operation of the entire company which has approximately 39,000 employees and activities in over 65 countries, and that Monsanto is currently involved in approximately 758 lawsuits nationwide. Monsanto attached an affidavit from Mahoney in which he claims to have no knowledge of Baker, her claims, or any of the events surrounding the claims. Baker responded that the deposition was necessary to determine Monsanto's net worth, and to inquire into its sexual harassment policies and procedures. After a hearing the trial court denied the motion for protective order. The trial court further ordered that Mahoney be deposed in St. Louis, Monsanto's principal place of business, that the deposition be limited to no more than three hours, and that the parties work to agree on a date and time. Baker sent a second deposition notice and Monsanto filed a motion with the trial court to reconsider its decision. The trial court denied the motion for reconsideration.

### Discussion

A party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence. Tex.R.Civ.P. 166b(1), (2)(a). Consistent with that right, the person noticed for deposition has the right to an order "in the interest of justice necessary to protect the movant from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." Tex. R.Civ.P. 166b(5)(b).

Apex depositions, such as those involved in *Cessna v. Chambers, State Farm v. Dellana, Dupont v. Davidson,* and in this case, when conducted before less intrusive means of discovery have been exhausted, create a tremendous potential for abuse and harassment. *See Liberty Mutual Ins. Co. v. Superior Court of San Mateo County,* 10 Cal.App. 4th 1282, 13 Cal.Rptr.2d 363, 366 (1992). In several decisions, courts have recognized the

potential for abuse when a plaintiff seeks to initiate its discovery "at the top," and do not allow a plaintiff's deposition power to automatically reach the pinnacle of the corporate structure. *See e.g., Salter v. Upjohn,* 593 F.2d 649, 651 (5th Cir.1979) (upholding a protective order on the basis of Upjohn's reasonable assertion that its president did not have any direct knowledge of the facts, and on the trial court's order allowing the deposition only if deposition of Upjohn employees with more knowledge proved unsatisfactory); *Mulvey v. Chrysler Corp.,* 106 F.R.D. 364, 366 (D.R.I.1985) (granting protective order requiring that extent of president's knowledge first be explored by written interrogatories, based on affidavit by company president expressing ignorance of the facts sought by plaintiff); *Travelers Rental Co., Inc. v. Ford Motor Co.,* 116 F.R.D. 140, 145–46 (D.Mass.1987) (citing with approval cases deferring the depositions of high-level executives until subordinates with supposedly equal or greater knowledge have been deposed, and adopting general rule that knowledge of high-level executives first be explored by interrogatories); *Broadband Comm., Inc. v. Home Box Office, Inc.,* 157 A.D.2d 479, 549 N.Y.S.2d 402, 402 (1990) (upholding protective order issued in favor of corporate CEO sought to be deposed because CEO submitted affidavit denying any involvement in negotiations underlying lawsuit, and because no evidence was presented to negate assertions in CEO's affidavit).

I believe that the reasoning of these cases is sound and presents a fair balance between the right of a plaintiff to conduct discovery in its case within the limits of the rules, and the right of someone at the apex of the hierarchy of a large corporation to avoid being subjected to undue harassment and abuse. When top-echelon officers of large corporations do not have knowledge of a specific incident or case handled several levels down the corporate pyramid, it is sensible to prevent a plaintiff from "leap-frogging" to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved with everyday corporate operations, and without showing a reasonable indication that the high-level officer sought to be deposed has personal knowledge of the facts of the case. I would therefore hold that when a corporate officer at the apex of the corporate hierarchy has filed a motion for protective order accompanied by an affidavit denying knowledge of any relevant facts, it is an abuse of discretion to deny a motion for protective order when the plaintiff has failed to show: 1) that there is a reasonable indication of the officer's personal knowledge of the underlying facts of the case; and 2) that less intrusive means of discovery have been exhausted.[2]

The use of apex depositions as a tool to coerce settlement is a recurring problem that needs to be addressed. The case today presents a perfect opportunity in which to do so. We do a disservice to the bench and bar when we continue to dodge this issue. Our failure to address this important issue is bound to complicate litigation and increase its costs. No telling how many more billable hours will be expended needlessly before the Court decides to tackle this important issue. I would grant leave in this case and adopt the two part test I have set out above. Additionally, I would grant the mandamus relief requested by Monsanto because I believe that, under the facts of this case, denying Monsanto's motion for protective order is a clear abuse of discretion because the plaintiff did not make the two showings mentioned above.

---

**2.** *See Liberty Mutual,* 13 Cal.Rptr.2d at 365. Our opinion in *Wal–Mart Stores, Inc. v. Street,* 754 S.W.2d 153 (Tex.1988), does not address the trial court's analysis of the appropriateness of taking Sam Walton's deposition. Certainly it does not stand for the proposition that a CEO's deposition is appropriate in every case.