In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00047-CV


______________________________




LAWRENCE EDWARD THOMPSON, Appellant



V.



VICTOR RODRIGUEZ, ET AL., Appellees




 


On Appeal from the 12th Judicial District Court


Walker County, Texas


Trial Court No. 20,390




 




Before Morriss, C.J., Ross and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Lawrence Edward Thompson appeals from the district court's dismissal of his action
against Victor Rodriguez, chairman of the Texas Board of Pardons and Paroles, and other
defendants. Thompson, an inmate in the Texas Department of Criminal Justice,
Institutional Division, alleged that Rodriguez and the Board of Pardons and Paroles, among
other things, violated his civil rights under 42 U.S.C.A. § 1983 (West Supp. 2002) by
arbitrarily and capriciously denying him parole, by retroactively applying amended policies
and procedures to deny him parole, by making it more difficult for him to gain parole
because of his religious beliefs, and by refusing him parole in retaliation for his legal and
religious activities.

 The trial court dismissed Thompson's suit because he failed to comply with Tex. Civ.
Prac. & Rem. Code Ann. §§ 14.004, 14.005 (Vernon 2002), and because his suit was not
properly brought under 42 U.S.C.A. § 1983.

 Thompson filed his suit as an indigent after filing a proper affidavit of inability to pay
costs. Because of his status as an indigent inmate, he is subject to the provisions of
Sections 14.004 and 14.005 of the Texas Civil Practice and Remedies Code.

 Section 14.004 of the Civil Practice and Remedies Code provides:

 (a) An inmate who files an affidavit or unsworn declaration of
inability to pay costs shall file a separate affidavit or declaration:

 

 (1) identifying each suit, other than a suit under the Family
Code, previously brought by the person and in which the person was
not represented by an attorney, without regard to whether the person
was an inmate at the time the suit was brought; and

 

 (2) describing each suit that was previously brought by:

 

 (A) stating the operative facts for which relief was
sought;

 

 (B) listing the case name, cause number, and the
court in which the suit was brought;

 

 (C) identifying each party named in the suit; and

 

 (D) stating the result of the suit, including whether the
suit was dismissed as frivolous or malicious under Section
13.001 or Section 14.003 or otherwise.

 

 (b) If the affidavit or unsworn declaration filed under this section
states that a previous suit was dismissed as frivolous or malicious, the
affidavit or unsworn declaration must state the date of the final order
affirming the dismissal.

 

 (c) The affidavit or unsworn declaration must be accompanied by
the certified copy of the trust account statement required by Section
14.006(f).

 

Tex. Civ. Prac. & Rem. Code Ann. § 14.004.

 Section 14.006(f) of the Texas Civil Practice and Remedies Code provides that:

 The inmate shall file a certified copy of the inmate's trust account statement
with the court. The statement must reflect the balance of the account at the
time the claim is filed and activity in the account during the six months
preceding the date on which the claim is filed. The court may request the
department or jail to furnish the information required under this subsection.

 

Tex. Civ. Prac. & Rem. Code Ann. § 14.006(f) (Vernon 2002).


 Section 14.005 of the Civil Practice and Remedies Code provides generally that an
inmate who files a claim that is subject to the grievance system established under Tex.
Gov't Code Ann. § 501.008 (Vernon 1998) shall file an affidavit or declaration stating the
date the grievance was filed and the date a written decision was received by the inmate,
and shall file a copy of the written decision from the grievance system.

 In reviewing a trial court's decision to dismiss a case subject to Chapter 14, we apply
an abuse of discretion standard of review. Clark v. J.W. Estelle Unit, 23 S.W.3d 420 (Tex.
App.-Houston [1st Dist.] 2000, pet. denied).

 Thompson filed an affidavit listing individually a multitude of suits he had filed in
state and federal court, many of which were still pending at the time this suit was filed. 
Many of these listings give at least some of the facts and details of the suits as required
by Subsections (a)(2)(A), (B), (C), and (D) of Section 14.004, but as to some of them,
neither the operative facts nor the final results are given. Moreover, Thompson's affidavit
contains one general statement as follows:

 [S]ince 1985, I have filed numerous suits in state and federal court all over
the state but because of a TDCJ-ID rule that only allows prisoners to keep
records of current legal actions I'm unable to provide the court with
information concerning these actions.

 

Thompson's affidavit is therefore insufficient in the respects noted, and it does not comply
with the requirements of Section 14.004. Although Thompson states he does not have
records of these numerous other suits, he obviously has some knowledge of them since
he filed them, and he cannot shift the burden to the trial court to search out the necessary
information concerning these suits.

 Additionally, Thompson's affidavit is not accompanied by a certified copy of his trust
account statement as required by Subsection (c) of Section 14.004. Thompson states at
one point in his pleadings that he filed a copy of his trust account statement with the court
in 1998, but there is no copy of such a statement in the record here, and there is no
indication that such a statement was filed in connection with this suit. Furthermore, Section
14.006(f) expressly provides that the certified copy of the trust account statement must
reflect the balance of the account at the time the claim is filed and the activity in the
account during the six months preceding the date on which the claim is filed. A copy of a
statement filed in 1998 would obviously not be sufficient in this regard.

 Because Thompson's affidavit and declaration are insufficient to comply with the
requirements of Section 14.004, the trial court was within its discretion in dismissing
Thompson's suit. Obadele v. Johnson, 60 S.W.3d 345 (Tex. App.-Houston [14th Dist.]
2001, no pet.); Thomas v. Knight, 52 S.W.3d 292 (Tex. App.-Corpus Christi 2001, pet.
denied); Hall v. Treon, 39 S.W.3d 722 (Tex. App.-Beaumont 2001, no pet.); Williams v.
Brown, 33 S.W.3d 410 (Tex. App.-Houston [1st Dist.] 2000, no pet.); Jackson v. Tex. Dep't
of Criminal Justice-Inst. Div., 28 S.W.3d 811 (Tex. App.-Corpus Christi 2000, pet. denied);
Clark v. J.W. Estelle Unit, 23 S.W.3d 420.

 Because dismissal was proper on the grounds discussed heretofore, it is not
necessary for us to discuss the other allegations of error raised by Thompson.

 For the reasons stated, the judgment of the trial court is affirmed.


 William J. Cornelius*

 Justice

*Chief Justice, Retired, Sitting by Assignment


Date Submitted: October 17, 2002

Date Decided: February 10, 2003



basis exists for discovery). The
Texas Supreme Court specifically noted the parties provided no explanation of how the settlement
agreements were relevant. Leggat, though, is distinguishable from the current dispute. The
settlement agreements in Leggat concerned other lawsuits and different parties. The assigned loans
are at issue in the current case. (6) Further, as discussed below, the trial court did not abuse its
discretion in finding the request was reasonably calculated to lead to discovery of relevant evidence.

 In general, discovery may be obtained of any unprivileged information (7) relevant to the subject
matter of the case, including inadmissible evidence, provided the request is reasonably calculated
to lead to the discovery of admissible evidence. See Tex. R. Civ. P. 192.3(a); see also CSX Corp.,
124 S.W.3d at 152; Monsanto Co. v. May, 889 S.W.2d 274, 276 (Tex. 1994). Because discovery
may not be used as a fishing expedition, discovery requests must be reasonably tailored to include
only matters relevant to the case. CSX Corp., 124 S.W.3d at 152; Am. Optical Corp., 988 S.W.2d
at 713. Information is relevant if it tends to make the existence of a fact that is of consequence to
the determination of the action more or less probable than it would be without the information. Tex.
R. Evid. 401. 

 Whether a discovery request is reasonably calculated to lead to the discovery of admissible
evidence is largely within the trial court's discretion. See In re Colonial Pipeline Co., 968 S.W.2d
938, 941 (Tex. 1998). Whether the amount of consideration Pilgrim's Pride paid to obtain the
assignments from Hibernia ultimately proves inadmissible at trial, (8) the information sought in this
case is not "patently" irrelevant. By pleading a counterclaim based on the assigned loans, Pilgrim's
Pride has placed the assigned loans in dispute. The transaction by which Pilgrim's Pride allegedly
acquired these rights from the original lender is the area of inquiry sought by PPR&M in its
discovery request. As such, whether any value was paid for the assigned loans may be relevant. See,
e.g., Tex. Bus. & Com. Code Ann. § 3.203(c) ("Transfer of Instrument; Rights Acquired by
Transfer"); § 3.302(a)(2) ("Holder in Due Course"); § 3.303 ("Value and Consideration") (Vernon
2002). Additionally, Pilgrim's Pride has pled defenses and counterclaims based on equitable
grounds. (9) The amount paid for the loans could be relevant under one of these theories. The trial
court did not abuse its discretion in finding the request either sought discovery of admissible
evidence or was reasonably calculated to lead to discovery of admissible evidence.

 A reasonably tailored discovery request is not overbroad merely because it may include some
information of doubtful relevance, and "parties must have some latitude in fashioning proper
discovery requests." Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995). In general, the
scope of discovery is broadextending to "any matter that is not privileged and is relevant to the
subject matter of the pending action." Tex. R. Civ. P. 192.3(a). Further, "only in certain narrow
circumstances is it appropriate to obstruct the search for truth by denying discovery." State v. Lowry,
802 S.W.2d 669, 671 (Tex. 1991); Collins v. Cleme Manor Apartments, 37 S.W.3d 527, 532-33
(Tex. App.--Texarkana 2001, orig. proceeding). 

  Because  reasonable  minds  could  differ  concerning  whether  the  information  sought
either (1) is relevant to any issue involved in the lawsuit or (2) could reasonably lead to the discovery
of such information, the documents sought are not "patently irrelevant." The trial court's order was
not arbitrary and unreasonable, nor did it constitute a clear abuse of discretion.

 We deny Pilgrim's Pride's petition for writ of mandamus.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 24, 2006

Date Decided: October 25, 2006
1. This is the third petition for writ of mandamus filed by Pilgrim's Pride Corporation
concerning the dispute between these parties. This Court denied relief on the two previously filed
petitions. See In re Pilgrim's Pride Corp., No. 06-06-00036-CV, 2006 Tex. App. LEXIS 4307 (Tex.
App.--Texarkana May 18, 2006, orig. proceeding) (mem. op.); see also In re Pilgrim's Pride Corp.,
187 S.W.3d 197 (Tex. App.--Texarkana 2006, orig. proceeding).
2. Pilgrim's Pride alleges PPR&M submitted fraudulent invoices seeking payment for work for
which PPR&M had already been compensated, as well as seeking payment for work that was not
necessary or incidental to the fulfillment of PPR&M's obligations under any agreement. Pilgrim's
Pride also alleges PPR&M conspired with former employees of Pilgrim's Pride who would approve
payment of fraudulent invoices in return for payment or other compensation. Specifically, Pilgrim's
Pride alleges PPR&M built a private boathouse for the personal benefit of former Pilgrim's Pride
employees but fraudulently submitted the cost of the work to Pilgrim's Pride. 
3. Apparently, Pilgrim's Pride purchased the lines of credit, notes, and commercial guarantees
from Hibernia. 
4. PPR&M sought and obtained from the trial court an order compelling production of all items
described in certain paragraphs of Requests for Production of July 19, 2005, that is, from Hibernia
National Bank, the items described in requests 7, 9, 10, and 11, and from Pilgrim's Pride, the items
described in requests 7, 9, and 11. The trial court compelled production of these specific items, at
issue in this mandamus proceeding:


 [7.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and PPR&M, Inc.
owes a debt, is the borrower or guarantor.

 . . . .

 [9.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and Albert
Littleton, as guarantor for PPR&M, Inc., owes a debt, is the borrower or guarantor.


 [10.] All documents and tangible things that discuss, relate to, refer to or reflect any
agreements between Pilgrim's Pride Corporation and Hibernia National Bank, its
successors or assigns, regarding the purchase or assumption of any negotiable
instrument which William Pierce, as guarantor for PPR&M, Inc., owes a debt, is the
borrower or guarantor.


 [11.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and William
Pierce, as guarantor for PPR&M, Inc., owes a debt, is the borrower or guarantor.
5. In addition to Leggat, Pilgrim's Pride cites Kuntz, 124 S.W.3d at 180; CSX Corp., 124
S.W.3d at 153; and Sears, Roebuck & Co. v. Ramirez, 824 S.W.2d 558, 559-60 (Tex. 1992). 
6. PPR&M also argues the trial court did not abuse its discretion because the assignment of the
loans is "tantamount to a settlement agreement between Pilgrim's and Hibernia" and, therefore,
discoverable. The record contains no evidence that the assignment of the loans resolved any claims
Hibernia had pending against Pilgrim's Pride. On the basis of the record before us, the assignment
of the loans in this case is not the functional equivalent of a settlement agreement. 
7. Pilgrim's Pride has not claimed any privilege applies to the disputed documents, nor has it
argued that there is any particular difficulty involved in producing the documents.
8. Relevance should not be confused with admissibility. Admissibility is not required for
information to be discoverable. See Tex. R. Civ. P. 192.3(a); Axelson, Inc. v. McIlhany, 798 S.W.2d
550, 553 (Tex. 1990). 
9. Pilgrim's Pride argues PPR&M's sole contention is that the documents at issue are relevant
to Pilgrim's Pride's claims to enforce PPR&M's obligations under the loan documents. We do not
believe PPR&M's claims can be so limited. PPR&M referred, on appeal and to the trial court, to
Pilgrim's Pride's claims in general as "affirmative defenses." Even though PPR&M did argue that
the information was relevant to its obligations under assigned loans, PPR&M did not explicitly
restrict its argument.