Susie J. SALTER, As Executrix of the Estate of Salter, Rufus, Deceased, Plaintiff-Appellant,

v.

The UPJOHN COMPANY, a corporation, Defendant-Appellee.

No. 77–1283.

United States Court of Appeals, Fifth Circuit.

April 23, 1979.

---

James W. Garrett, Sr., Thomas H. Keene, Montgomery, Ala., for plaintiff-appellant.

Wm. Harold Albritton, Andalusia, Ala., John R. Matthews, Jr., Montgomery, Ala., for defendant-appellee.

Before THORNBERRY, CLARK and RO-NEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiff Susie J. Salter, as executrix of the estate of Rufus Salter, alleged in the trial court that defendant Upjohn failed adequately to test and label its prescription drug Cleocin and that as a result of this failure, Rufus Salter received the drug and died. In a general verdict, the jury found for defendant and the trial judge rendered judgment accordingly. Plaintiff appeals, alleging the trial judge committed a great variety of errors. We have read the briefs and the record and conclude that the majority of plaintiff's allegations are clearly without merit. One of the issues, however, requires a more protracted discussion.

Plaintiff requested three times that the trial judge allow her to take the deposition of Upjohn's president, Dr. William Hubbard. Each time the judge denied her request. Plaintiff first notified defendant that she intended to take Dr. Hubbard's deposition in January of 1976. Plaintiff had previously notified Upjohn that she intended to take the depositions of those employees of the corporation who were most familiar with the manufacture, approval and marketing of the drug Cleocin. The notice of Dr. Hubbard's deposition indicated that plaintiff would take his deposition at the same time as those of the other employees. Plaintiff also had a copy of the prepared statement Dr. Hubbard had given to a committee of the United States Senate

concerning the testing, marketing and use of the drug in question. Upjohn sought an order protecting Dr. Hubbard from the deposition. The trial judge granted defendant's motion.

■ It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error. *See* 4 J.Moore & J.Lucas, Moore's Federal Practice ¶ 26.69 (3d ed. 1976); 8 C.Wright & A.Miller, Federal Practice & Procedure § 2037 (1970). We do not believe that this first order of the trial judge was such a complete prohibition, however. Although the court's order vacated plaintiff's notice to take the deposition of Dr. Hubbard, it is clear that the order merely required plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts before deposing Dr. Hubbard. The trial judge had indicated that if the testimony of the other employees was unsatisfactory, he would allow plaintiff to take Dr. Hubbard's deposition.[1] We do not interpret this ruling as totally prohibiting plaintiff from taking Dr. Hubbard's deposition. Rather, the trial judge was merely exercising the broad discretion that this court has long recognized he has in controlling the timing of discovery. *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124 (5 Cir. 1976). At the time the judge made this ruling, plaintiff had the testimony Dr. Hubbard had given to the Senate Committee, which contained substantially the same information plaintiff wished to obtain from Dr. Hubbard in the deposition. Plaintiff was also scheduled to take the depositions of those employees who Upjohn indicated had the most direct knowledge of the relevant facts. It was therefore very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon her requests to depose Dr. Hubbard, unless, as the trial judge noted, those other employees did not "have more personal knowledge" of the facts or their testimony was inconsistent with the Senate testimony of Dr. Hubbard. The judge's attempt to postpone or prevent the necessity of taking Dr. Hubbard's deposition was within his discretion in light of defendant's reasonable assertions that Dr. Hubbard was extremely busy and did not have any direct knowledge of the facts. Thus, the judge's issuance of the protective order vacating plaintiff's first notice to take Dr. Hubbard's deposition was not error.

■ Of course, if after taking the other depositions, plaintiff was not satisfied and again properly gave notice of or requested taking Dr. Hubbard's deposition, the judge probably should have allowed the deposition. After the first protective order, however, plaintiff never again properly raised the issue in the trial court. In May 1976, plaintiff moved for the court to compel Dr. Hubbard to appear in Montgomery, Alabama for a deposition. Upjohn's principal place of business and Dr. Hubbard's residence was Kalamazoo, Michigan. It is well settled that "[t]he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business," especially when, as in this case, the corporation is the defendant. 8 C.Wright & A.Miller, Federal Practice & Procedure § 2112 at 410 (1970); *see also* 4 J.Moore & J.Lucas, Moore's Federal Practice ¶ 26.70[1.—4] (3d ed. 1976). Before nei-

1. According to Upjohn's attorney at the hearing on plaintiff's second request to depose Dr. Hubbard:

> Your Honor, you ruled on our motion for protective order [with respect to plaintiff's first notice to take the deposition of Dr. Hubbard] that we were entitled not to have him deposed because [plaintiff's attorney] already had the testimony that was presented at the Senate hearing, and Your Honor ruled that since [plaintiff's attorney] was deposing about eight or ten people of the company up there who actually had the more personal knowledge of the matter than the president of the company, that if any of their testimony was different from what the president of the company said then you would let him be questioned on that, but otherwise he should get it from these other people.

Plaintiff refers to the above statement in her brief to this court and apparently agrees that it is a proper characterization of the judge's ruling on her first notice to take Dr. Hubbard's deposition. Therefore, we will assume it is correct.

**652**

ther the trial court nor this court has plaintiff argued any peculiar circumstances that would justify her request to depose Dr. Hubbard in Montgomery. Therefore, the trial judge correctly denied plaintiff's motion to depose Dr. Hubbard in Alabama.

At oral argument plaintiff's attorneys asserted that when they made this second motion they were willing to go to Kalamazoo to take the deposition if necessary. Even if we accept this assertion as true, it is irrelevant. Plaintiff did not express her willingness to defendant or the trial judge. In fact, the motion demands specifically that "the Court order the Defendant to produce in Montgomery at a convenient time for testifying, Dr. Hubbard . . ." Plaintiff's lately expressed alacrity to alter the motion cannot be the grounds for reversal of the trial court's decision.

 In October 1976 plaintiff moved for a third time to take Dr. Hubbard's deposition. This motion stated: "plaintiff requests that this Court either order the defendant to produce Dr. Hubbard in Montgomery, Alabama, for his testimony or to pay to plaintiff's attorney a reasonable charge for the time involved and also to pay his expenses to and from Kalamazoo, Michigan, to take this deposition of Dr. Hubbard." This motion was properly denied for several reasons. First, as noted above, the court did not abuse its discretion in refusing to compel Dr. Hubbard to appear in Montgomery. Second, the same policies validate the court's refusal to require defendant to pay plaintiff's expenses of taking the deposition in Kalamazoo. Plaintiff has never asserted any extraordinary circumstances that would have justified the unusual order she requested and we do not believe the trial judge's refusal to issue the order was an abuse of discretion. Third, on September 20, 1976, the court had entered a pretrial order, with the agreement of the parties, that "all discovery in this case be completed on or before October 1, 1976." On October 21, 1976, plaintiff made her third request to take Dr. Hubbard's deposition. Plaintiff has failed to even acknowledge that she made this request after the date by which the district court had ordered the parties to complete discovery. Therefore, she has of course not argued how the trial judge abused his discretion in imposing this limitation. It is widely recognized that the district court "may require discovery to be completed by a specified time in order to prevent delay of the trial by last minute resort to the discovery processes." 8 C.Wright & A.Miller, *supra*, § 2038 at 278 (1970). When the parties have agreed to the limitations, as in this case, we can perceive no abuse of discretion in enforcing those restraints.

Because the judge was justified in postponing Dr. Hubbard's deposition the first time plaintiff requested it, and because plaintiff did not properly reassert the request, the district judge did not abuse his discretion by preventing the deposition any of the three times plaintiff sought to take it. The judgment of the district court is therefore AFFIRMED.