**ROLSCREEN COMPANY, Plaintiff,**

v.

**PELLA PRODUCTS OF ST. LOUIS, INCORPORATED, Defendant.**

No. 4–91–CV–70766.

United States District Court, S.D. Iowa, C.D.

Nov. 23, 1992.

Alan J. Mandel of Sonnenschein, Nath & Rosenthal, Chicago, Ill., and Kim Walker of Faegre & Benson, Des Moines, Iowa, for plaintiff.

James R. Keller and Frank B. Janoski of Coburn & Croft, St. Louis, Mo., and Robert G. Allbee of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, Iowa, for defendant.

## ORDER DENYING MOTION FOR PROTECTIVE ORDER

BENNETT, United States Magistrate Judge.

This case raises the troublesome question of whether and under what circumstances a protective order pursuant to Federal Rule of Civil Procedure 26(c) should be issued to prohibit the deposition of the president of a corporation who is a party to this litigation. Plaintiff Rolscreen Corporation ("Rolscreen") seeks to prohibit Defendant Pella Products of St. Louis, Inc. ("Pella Products–St. Louis") from taking the deposition of Rolscreen's president, Wayne Bevis.

## I. INTRODUCTION AND FACTUAL BACKGROUND.

On October 29, 1992, Rolscreen filed Plaintiff Rolscreen Company's Motion for a Protective Order and Request for Oral Argument. On November 2, 1992, this court entered an order setting this matter for hearing on November 20, 1992, and required Pella Products–St. Louis to file a response, pursuant to Local Rule of Court 14(f), prior to the hearing. Pella Products–St. Louis filed its Brief in Resistance to Rolscreen's Motion for Protective Order on November 16, 1992. A telephonic hearing on the motion was held on November 20, 1992. Alan J. Mandel of Sonnenschein, Nath & Rosenthal, Chicago, Illinois and Kim Walker of Faegre & Benson appeared for Rolscreen. James R. Keller and Frank B. Janoski of Coburn & Croft, St. Louis, Missouri and Robert G. Allbee of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee appeared for Pella Products–St. Louis.

This is a declaratory judgment action by Rolscreen which seeks an order declaring that Rolscreen's conditional notice of termination of its distribution agreement with Pella Products–St. Louis was lawful and nonactionable. Rolscreen asserts that its president Wayne Bevis "was not involved in the decision to issue a conditional notice of termination, or in the decision as to which curative performance conditions to impose upon St. Louis.... Mr. Bevis was advised of the decision to issue the conditional notice of termination and approved of that decision, but had no other role in that decision. He has no first-hand knowledge of the facts or circumstances surrounding the creation of the conditions set forth in the conditional notice of termination or of St. Louis' performance since the notice was issued." Plaintiff Rolscreen Company's Motion for a Protective Order and Request for Oral Argument at 2, ¶ 2.

Not surprisingly, Pella Products–St. Louis disputes Rolscreen's contention regarding the scope of knowledge of Mr. Bevis. They assert that "[a]ccording to a September 24, 1991 internal memorandum from Rolscreen employee Roger Steenhoek to Rolscreen employee Kevin Flannery, Rolscreen in October, 1990 had 'pretty well decided to give conditional notice' to St. Louis and a termination letter was ready to be delivered. Steenhoek states that this did not happen because 'Wayne [Bevis] wants to give Walt [President of St. Louis] ninety days to put together a plan of how he could get business turned around." Pella Products of St. Louis, Inc.'s Brief in Resistance to Rolscreen's Motion for Protective Order at 3, ¶ 1. Additionally, Pella Products–St. Louis asserts that Rolscreen's own policy requires that "termination of a distributor subject to prior approval of the president (in this case Wayne Bevis)." *Id.* at 4, ¶ 3. Pella Products–St. Louis also asserts that the first conditional notice of

termination was sent for review to Bevis; rather than issuing the first proposed conditional notice of termination Rolscreen requested Pella Products–St. Louis to revise its marketing plan and this correspondence was carbon copied to Bevis; Bevis was updated by way of detailed memorandum immediately prior to Rolscreen reviewing Pella Products–St. Louis' marketing plan before making a final determination on the notice of termination; Bevis was involved in informing one of the owners of Rolscreen concerning the developments giving rise to the conditional notice of termination. Pella Products of St. Louis, Inc.'s Brief in Resistance to Rolscreen's Motion for Protective Order at 4–5, ¶¶ 3–6.

Before turning to the merits of this controversy, the court must first examine the court's discretion in reviewing this matter, the definition of relevancy in the context of discovery and the burden of proof on a party seeking a protective order.

## II. SCOPE OF REVIEW AND RELEVANCY.

■ A district court is afforded wide discretion in its handling of discovery matters, *Cook v. Kartridg Pak Co.*, 840 F.2d 602, 604 (8th Cir.1988), and in limiting discovery in those instances where there is a showing of good cause. *Kaufman v. Edelstein*, 539 F.2d 811, 821 (2d Cir.1976); *Ross v. Bolton*, 106 F.R.D. 22, 23 (S.D.N.Y.1985). In *Cook*, the court held:

> A district court must be free to use and control pretrial procedure in furtherance of the orderly administration of justice. *O'Neal v. Riceland Foods*, 684 F.2d 577, 581 (8th Cir.1982). A district court is afforded wide discretion in its handling of discovery matters, and its decisions will be upheld "unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of

the case." *Id.* (quoting *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir.1977)).

*Cook*, 840 F.2d at 604.

■ Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with "information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement."[1] *In re Hawaii Corp.*, 88 F.R.D. 518, 524 (D.Haw.1980); *see Gray Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir.1985); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *Lozano v. Maryland Casualty Co.*, 850 F.2d 1470, 1472 (11th Cir.1988), *cert. denied*, 489 U.S. 1018, 109 S.Ct. 1136, 103 L.Ed.2d 197 (1989).

Issues of relevancy "are traditionally left to the discretion of the trial court. *E.g., Centurion Indus. Inc. v. Warren Steurer*, 665 F.2d 323, 326 (10th Cir.1981). The test of relevance in the discovery context is a very broad one. *AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D.Ill.1981). More precise evidentiary rulings should await trial, when the issues are more clearly defined, and be made then or *in limine.*" *Geophysical Systems Corp. v. Raytheon Co., Inc.*, 117 F.R.D. 646, 647 (C.D.Cal.1987).

"The test for relevance in the discovery area is an extremely broad one. '[I]t is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.' 8 Wright & Miller, *Federal Practice and Procedure*, Civil § 2008 (1970). *See Midland–Ross Corp. v. United Steelworkers of America*, 83 F.R.D. 426 (W.D.Pa.1979); *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251 (N.D.Ill. 1978)." *Am Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (1981).

---

**1.** This liberal construction ensures that discovery "together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

"No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 616 (5th Cir.1977) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1878); *see Bennett v. La Pere,* 112 F.R.D. 136, 138 (D.R.I.1986).

"Moreover, even if [a party's] broad request yields some evidence that is not admissible, this does not bar a request that is calculated to lead to production of relevant matter. *Fed.R.Civ.P.* 26(b)(1); *Federal Practice and Procedure* at § 2008; *see also, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)." *Fann v. Giant Food, Inc.,* 115 F.R.D. 593, 596 (D.D.C.1987).

"One objecting to discovery on the grounds of relevancy carries the burden to sustain the objection." *Kramer v. Boeing Co.,* 126 F.R.D. 690, 692 (D.Minn.1989). "This is a difficult objection upon which to prevail during the discovery phase of an action. The spirit of *Rule* 26(a) of the *Federal Rules of Civil Procedure* is that discovery be self-effectuating, without need to resort to the court, and that its scope be liberal, extending to all matters reasonably calculated to lead to admissible evidence. This standard is well-ensconced, and is generally known and understood by civil practitioners." *Id.* (citations omitted.)

The phrase "reasonably calculated to lead to the discovery of admissible evidence" has been interpreted as meaning " " '*any possibility* that the information sought may be relevant to the subject matter of the action.' " " *Morse/Diesel, Inc. v. Fidelity and Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988) (quoting *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348, 353 (S.D.N.Y.1973)). "Once it is determined that material sought by discovery is relevant and not privi-

leged, .... the party opposing discovery should have the burden of establishing some good cause or sound reason for blocking disclosure." *Bennett,* 112 F.R.D. at 140. *But see Bottaro v. Hatton Assoc.,* 96 F.R.D. 158 (E.D.N.Y.1982) (the requirement of "particularized showing" of a likelihood that admissible evidence will be generated places the burden of establishing relevance on the party seeking production of discovery). This definition of relevancy in the context of discovery is important in determining whether or not Rolscreen's motion for a protective order seeking to prohibit the deposition of Rolscreen's president, Wayne Bevis, should be granted.

## III. ROLSCREEN'S MOTION FOR PROTECTIVE ORDER.

Rolscreen's attempt to prohibit Pella Products–St. Louis from taking the deposition of Rolscreen's president, Wayne Bevis, is premised on Federal Rule of Civil Procedure 26(c). Federal Rule of Civil Procedure 26(c) provides:

Upon motion by a party or the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order where justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time and place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be dis-

closed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit such discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

■ Rolscreen, as the party or person seeking a protective order, bears the burden of making the "good cause" showing that the information being sought falls within the scope of Rule 26(c), and that she will be harmed by its disclosure. *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 954 n. 5 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Smith*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *see General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

■ Rolscreen, as the party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C.1991); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981). This requirement "furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts." *Brittain*, 136 F.R.D. at 412.

Federal Rule of Civil Procedure 26(c) authorizes entry of a protective order upon a party or by the person from whom discovery is sought when good cause is shown. " 'Good cause' exists, according to Rule 26(c), when justice requires the protection of 'a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense.' " *United States v. Miracle Recreation Equip. Co.*, 118 F.R.D. 100, 104 (S.D.Iowa 1987). The courts have imposed a balancing test in determining whether good cause has been shown. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277–78 (7th Cir.1982).

Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C.1987); *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987). The rationale for not prohibiting the taking of depositions is that "[s]ince the notice for taking a deposition is not required to specify the subject matter of the examination, the need for protection usually cannot be determined before the examination begins, and the moving party can be adequately protected by making a motion under rule 30(d) if any need for protection appears during the course of the examination." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2037 (1970) (footnote omitted). Therefore, the issue presented by the instant motion in this case is whether Rolscreen has carried its burden of demonstrating a sufficient need which would warrant the issuance of a protective order which would prohibit Pella Products–St. Louis from taking the deposition of Rolscreen's president, Wayne Bevis.

■ The gist of Rolscreen's argument in support of its motion is that Bevis was not a significant player in Rolscreen's decision to issue a conditional notice of termination to Pella Products–St. Louis. Rather, the three individuals chiefly responsible for that decision, Kevin Flannery, Rodger Steenhoek and Gary Christensen, are already known to the parties and the subject of depositions.[2] Therefore, Rolscreen ar-

---

2. Plaintiff's counsel Mandel represented at the hearing that the depositions of Flannery and Steenhoek have already been completed, and that Christensen's deposition is partly completed. The depositions of these three individuals has taken some 35 hours to date.

gues that since a deposition of Bevis would be of marginal utility it would be "burdensome and oppressive" for it to produce him for that purpose.

Pella Products–St. Louis counters that its deposition of Bevis is important to its counterclaims that Rolscreen's termination was pretextual in nature. Pella Products–St. Louis further insists that only Bevis and another individual, no longer employed by Rolscreen, can explain why Rolscreen delayed serving the conditional notice of termination from October of 1990 to March of 1991.

Upon review of the applicable legal authorities on the subject, the court concludes that it would be an abuse of its discretion to grant Rolscreen's Motion for Protective Order at this time. Although Bevis avers in his affidavit that he approved the sending of the conditional termination notice, he further submits that he has no "first-hand knowledge" concerning its creation. In *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140, 143 (D.Mass.1987), a decision which concerned anti-trust litigation, the court permitted the deposition of four high ranking Ford Motor Company executives, including the president, after five middle managers had already been deposed and the four Ford executives had submitted " 'remember nothing' " affidavits in which they professed a lack of recall, noting that "[c]onsidering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle a deponent to an order quashing the deposition." *Id.* at 143–44. The cogent reasoning underlying the court's decision was that a party's ability to test the memories of a deponent was particularly compelling under such circumstances because of the ease at which such a claim could be asserted, and the possibility that an individual's recollections could be refreshed. *Id.* at 143. To hold otherwise would deprive the party seeking the deposition of its chance to attempt to refresh the memory of the individual being deposed.

Here, Bevis avers to having no first hand knowledge regarding "the facts or circumstances surrounding the creation of the conditions set forth in the conditional notice of termination nor of St. Louis' performance since the notice was issued." Bevis Aff. at ¶ 4. The affidavit utterly fails to explain in detail Bevis' exact role in approving the issuance of the termination notice. The affidavit also does not indicate what second hand knowledge Bevis does have regarding the formulation of the conditions set out in the conditional termination notice. Rolscreen's mere incantation of Bevis' status as president and his claim of limited knowledge cannot be a basis for insulating Bevis from appropriate discovery. Pella Products–St. Louis should be permitted to ascertain what knowledge Bevis has regarding the termination notice. The court, therefore, concludes that Pella Products–St. Louis is entitled to "test" Bevis's professed lack of knowledge regarding the conditional notice of termination sent to Pella Products–St. Louis. *See Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121, 122 (D.Conn.1974).

■ Additionally, since Bevis admits approving the conditional notice of termination, Pella Products–St. Louis is entitled to explore whether Bevis has knowledge concerning the motivation behind that decision. *See Travelers Rental Co.,* 116 F.R.D. at 142. As the court pointed out; "[w]here the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action." *Id.* Although Bevis' deposition testimony may prove to be duplicative in some respects from that provided by lower ranking executives, individuals with greater authority may have the final word on why a company undertakes certain actions, and the motives underlying those actions. *Id.* at 146. Thus, it is clear that, based upon the definition of relevancy in the discovery context, Bevis has relevant knowledge that Pella Products–St. Louis is entitled to discover by way of deposition.

The legal authorities submitted by Rolscreen in support of its motion are all readi-

ly distinguishable from the facts of this case. In *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979), the court of appeals simply approved the district court's decision to require the plaintiff to depose other employees with allegedly more knowledge of the facts than Upjohn's president before deposing him. *Id.* at 651. In upholding the district court's decision, the court specifically noted that it did not interpret the district court's ruling as a total prohibition on the plaintiff's taking the deposition of Upjohn's president. *Id.* The court went on to specifically point out that "if after taking the other's depositions, plaintiff was not satisfied and again properly gave notice of requested taking [Upjohn's president's] deposition, the judge probably should have allowed the deposition." *Id.*[3]

Rolscreen also points the court to the unpublished decision in *Scott v. The Dime Savings Bank*, No. 88 C 495, 1989 WL 140286 (S.D.N.Y. Nov. 16, 1989). Judge Leisure's order and opinion upholding the decision of United States Magistrate Judge Tyler scarcely is controlling precedent given that it does not indicate the basis for the court's decision to deny plaintiffs' demand to depose senior bank officials. Apparently, however, plaintiffs had specifically demanded that these officials appear for depositions and respond to interrogatories on behalf of the bank, rather than allowing the bank to choose its own agent or representative to answer for it. *Id.* at *2. Thus, the court is forced to conclude that the *Scott* decision is of negligible precedential value.

Similarly, Rolscreen's citation to *Digital Equip. Corp. v. System Indust., Inc.*, 108 F.R.D. 742 (D.Mass.1986), provides little direction. The court, in granting a protective order prohibiting defendant from deposing plaintiff's president, did so specifically because defense counsel had stated on the record that he was going to "waste" one of his afternoons in a deposition. *Id.* at 744. The case does not stand for the proposition that a corporate president is not subject to being deposed. Rather, the court noted

that "[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president is subject to deposition." *Id.* (citing *CBS, Inc. v. Ahern*, 102 F.R.D. 820 (S.D.N.Y.1984). Here, Bevis does have personal knowledge of the facts relevant to the lawsuit. He is the individual who personally approved the issuance of the conditional notice of termination.

■ Accordingly, the court shall deny Rolscreen's Motion for Protective Order to the extent that it seeks to prohibit Pella Products–St. Louis from taking the deposition of Rolscreen's president, Wayne Bevis. However, Rolscreen's concern of allowing Pella Products–St. Louis to engage in a far flung deposition of an individual with limited knowledge has some merit. Indeed, even a fishing expedition has its limitations. The court, therefore, will order that Pella Products–St. Louis complete its deposition of Mr. Christensen and depose Mr. Jesse Stevens prior to taking Bevis' deposition. *See Salter*, 593 F.2d at 651. This procedure is employed in order to require Pella Products–St. Louis to complete discovery from those individuals whom Rolscreen asserts have more personal knowledge of the underlying facts of this dispute, and therefore limit Pella Products–St. Louis from engaging in duplicative discovery during Bevis' deposition. In addition, to further those ends, the court shall limit Bevis' deposition to eight (8) hours on one day, including colloquy amongst counsel. *See Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 355 (D.N.J.1990) (six hour limitation on deposition); *Martin v. Valley Nat'l Bank*, No. 89 Civ. 8361, 1992 WL 196798, at *6 (S.D.N.Y. Aug. 6, 1992) (depositions limited to one day per witness). The court concurs with the reasoning of Judge Leisure in the *Martin* decision that Federal Rule of Civil Procedure 26(b)(1) provides the court with authority to place a time limitation on Pella Products–St. Louis' deposition of Bevis. *See Salter*, 593 F.2d at 651.

---

**3.** Apparently, plaintiff never made a subsequent proper request to depose Upjohn's president.

*Martin,* No. 89 Civ. 8361, 1992 WL 196798, at *6.[4]

IT IS SO ORDERED.

---

**4.** In 1992, the Advisory Committee on the Civil Rules proposed extensive revisions to the Rules. The Advisory Committee initially proposed revising Rule 30 to add a six hour time limitation on each deposition unless the parties stipulated otherwise or obtained leave of court. This provision was deleted in the final recommendation by the Standing Committee on Rules of Practice and Procedure and the Advisory Committee on Civil Rules when they recommended the proposed amendments to the Federal Rules of Civil Procedure in July, 1992, to the Judicial Conference of the United States. Nevertheless, the proposed recommendation reflects the growing concern that lengthy depositions undermine the mandate of Federal Rule of Civil Procedure 1 that the Federal Rules "be construed to secure the just, speedy, inexpensive determination of every action."