Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

June 15, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for Plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Dept. of Justice, Washington, DC, for F.B.I. and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Robert Muze, Stein, Mitchell & Mezines, Washington, DC, for Anthony Marceca.

Ira Raphaelson, O'Melveny & Myers, L.L.P., Washington, DC, for Larry Potts.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on the Motion of Non–Party Larry Potts for Protective Order to Quash Subpoena or Alternatively, to Modify Subpoena on an Expedited Basis. Upon consideration of the submissions of the parties and the relevant law, the motion is DENIED.

### I. Background

As stated in several opinions by this court, the underlying allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that their privacy interests were violated when the Federal Bureau of Investigation ("FBI") improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. On April 15, 1998, plaintiffs served a subpoena on Larry Potts, executive Vice–President of Investigative Group International, Inc. ("IGI") and non-party in this matter, demanding the production of documents and the submission by Potts to a deposition. Prior to his present employment with IGI, Potts served as Assistant Director of the FBI during the time period most relevant to this lawsuit.

The deposition noticed in plaintiffs' subpoena was originally scheduled to take place on April 22, 1998, and the production of the subpoenaed documents was also to occur on this date. After discussions between coun-

sel, the deposition was indefinitely stayed by the parties. However, Potts' written objections and responses to plaintiffs' document requests were delivered to counsel for plaintiffs on April 21, 1998.

Counsel for both parties entered into discussions regarding the necessity of deposing Potts in light of Potts' position that he did not possess any information relevant to either the misappropriation and use of FBI files or the misuse of any government files. Because counsel for plaintiffs continued to insist on going forward with Potts' deposition, counsel for Potts discussed whether plaintiffs would agree to limit the length of the deposition or to limit the use of the videotape of the deposition to this litigation alone. When counsel for plaintiffs refused to agree to these limitations, Potts filed the motion presently before the court.

## II. *Analysis*

Potts argues that plaintiffs' subpoena should be quashed on several grounds. Potts claims that the subpoena should be quashed because it is impermissibly burdensome and seeks irrelevant and invasive information. Potts also contends that the potential hardship to him in complying with discovery and the absence of any information relevant to this proceeding in his possession outweighs any potential hardship to plaintiffs in having the subpoena quashed.

Potts' assertion that he possesses no information relevant to this proceeding is based on the fact that he was deposed under oath before the House of Representatives' Committee on Government Reform and Oversight in conjunction with that Committee's investigation of the White House Travel Office matter, commonly known as "Travelgate." Potts contends that during the investigation of Travelgate, he testified under oath that he did not have any knowledge or awareness of any matter related to Filegate. *See* Mot. for Protective Order to Quash Subpoena Ex. A at 22 (Committee on Government Reform and Oversight U.S. House of Representatives, July 26, 1996).

Potts also states that during his tenure at the FBI, he had no responsibility or oversight for investigating any matters related to

Filegate. This is supported by a declaration attached to his motion for a protective order in which he also adds that since leaving the FBI he has gained no personal knowledge of anyone obtaining, misusing, or mishandling any non-public information including FBI files or background investigative information. *Id.* Ex. B at 3 (Declaration of Larry Potts). Furthermore, Potts adds that he is unaware of any plan or intention by anyone to misuse FBI files or background investigative information. *Id.* at 4. It is also argued by Potts that other information sought is covered by the same evidentiary privileges asserted during the deposition of Terry Lenzner taken in this case by plaintiffs.

The contention that the potential hardship for Potts in complying with the subpoena outweighs any hardship plaintiffs would experience in having the subpoena quashed is based on Potts' belief that plaintiffs seek to depose him primarily for the purpose of obtaining information pertaining to Potts' involvement in the incident that occurred at Ruby Ridge in Idaho. Potts asserts that the sole reason plaintiffs' counsel subpoenaed him was to cause him embarrassment and to harass him rather than seek information about matters reasonably calculated to lead to the discovery of admissible evidence in this case.

 Having reviewed Potts' arguments, the court will address whether his deposition should be quashed. Generally speaking, "[a] party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *CBS, Inc. v. Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y.1984). Potts' efforts to quash his deposition is premised on Federal Rule of Civil Procedure 26(c) which provides:

> Upon motion by a party or the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c). As the party seeking the protective order, Potts bears the burden of making the showing of good cause contemplated by the rule. *Rolscreen Co. v. Pella Products of St. Louis, Inc.,* 145 F.R.D. 92, 95–96 (S.D.Iowa 1992); *Ahern,* 102 F.R.D. at 822. In this regard, Potts must make a specific demonstration of facts to support his request for the protective order quashing the deposition. Specifically, good cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense. The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. Indeed, "[t]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Prozina Shipping Co., Ltd. v. Thirty–Four Automobiles,* 179 F.R.D. 41 (D.Mass.1988). *See also Bucher v. Richardson Hospital Auth.,* 160 F.R.D. 88, 92 (N.D.Tex.1994) (stating that protective orders prohibiting depositions are "rarely granted" and then only if the movant shows a "particular and compelling need" for such an order). Moreover, the showing required under Rule 26(c) must be sufficient to overcome plaintiffs' legitimate and important interests in trial preparation. *See Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985) ("[T]rial preparation and defense . . . are important interests, and great care must be taken to avoid their unnecessary infringement.").

 The quashing of a subpoena and the complete prohibition of a deposition are certainly extraordinary measures which should be resorted to only in rare occasions. *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Naftchi v. New York Univ. Med. Ctr.,* 172 F.R.D. 130, 132 (S.D.N.Y.1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); *Frideres v. Schlitz,*

150 F.R.D. 153, 156 (S.D.Iowa 1993) ("Protective orders prohibiting depositions are rarely granted."); *Rolscreen,* 145 F.R.D. at 96 ("Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances."); *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). With this consideration in mind, courts have generally employed a balancing test to determine whether good cause has been shown by the party seeking to quash the deposition. *See Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1277–78 (7th Cir.1982).

 In the instant case, Potts has failed to demonstrate that extraordinary circumstances exist that necessitate the entry of a protective order completely prohibiting his deposition. In support of his motion to quash the deposition, Potts' argument is premised predominantly on his assertion that he possesses no knowledge or information pertaining to this case and that his testimony under oath before the House Committee on Government Reform and Oversight and his declaration establish this fact. A professed lack of knowledge typically does not constitute good cause and is insufficient to warrant the quashing of a deposition. *See Naftchi,* 172 F.R.D. at 132 (denying motion to quash deposition and stating "[n]or . . . does it matter that the proposed witness is a busy person or *professes lack of knowledge of the matters at issue,* as the party seeking the discovery is entitled to test the asserted lack of knowledge.") (emphasis added); *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.,* 160 F.R.D. 70, 73 (E.D.Pa.1995) (denying motion to quash deposition and stating "[the witness'] claim that she lacks personal knowledge does not compel us to rule in her favor . . . [and] is of no moment."). While the court is cognizant of the fact that Potts' profession of his lack of knowledge was given under oath, Potts was asked very open-ended questions on the subject of the transmittal of

FBI files from the FBI to the White House. Plaintiffs should be afforded the opportunity to probe more specifically into the extent of his knowledge. Without commenting directly on the knowledge Potts may or may not possess, the court notes that Potts, as former Assistant Director of the FBI during the time period relevant to this investigation, is of the class of individuals who would likely possess information relevant to this lawsuit. Although he may very well possess no such information—as his testimony and declaration clearly suggest, plaintiffs should be permitted to test his asserted lack of knowledge and to question Potts on matters directly related to this case.

▆▆▆▆ Potts concludes that because it is his position that he possesses no relevant information, plaintiffs seek to depose him solely to solicit irrelevant and invasive information on topics unrelated to this case. For this reason, Potts submits that the deposition is impermissibly burdensome and would result in undue hardship. Potts' concerns arise from his belief that counsel for plaintiffs will endeavor to question him regarding his participation in matters unrelated to this case.

Potts' concerns are not unfounded. Plaintiffs have demonstrated a penchant for questioning deponents on matters largely unrelated to the issues of the instant case. In a memorandum and order of April 13, 1998, this court examined the permissible scope of discovery in this case in response to allegations that plaintiffs were pursuing irrelevant information during depositions. The court concluded that plaintiffs would be permitted to question deponents on matters involving the misuse of FBI files that form the underlying allegations in this case and on "other matters bearing on the obtaining and misuse of government files in order to create the inference that it is reasonable to conclude

that FBI files were obtained and misused in the instant case." Mem. Order of April 13, 1998 at 6, 186 F.R.D. at 4.

The court is confident that any hardship or impermissible burden that Potts could potentially experience can be eliminated by reiterating that plaintiffs must limit their deposition questions within the confines set forth in the April 13, 1998 memorandum opinion.[1] Plaintiffs shall not question Potts regarding either Potts' or the FBI's participation in the matters occurring in Ruby Ridge, Idaho or Waco, Texas or any other matters falling outside the scope of the court's prior orders.

▆▆▆▆ Potts also raises concerns pertaining to the future use of the deposition testimony given the fact that counsel for plaintiffs intend to videotape the deposition. Potts seeks a protective order limiting the future use of the deposition. As stated, Rule 26(c) of the Federal Rules of Civil Procedure provides that for good cause a court may fashion a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). "This standard balances the governmental and first amendment interests at stake when a party seeks to disseminate information obtained through pretrial discovery." *Avirgan v. Hull,* 118 F.R.D. 252, 253 (D.D.C.1987) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). In *Doe v. District of Columbia,* 697 F.2d 1115, 1119 (D.C.Cir. 1983), the Court of Appeals for the District of Columbia Circuit stated:

> Protective orders that restrict dissemination to the public of discovered information . . . stand on a somewhat unusual footing. The resultant infringement of interests protected by the First Amendment, we have held, requires a district court to be

---

1. As stated, Potts served objections to plaintiffs' requests for documents on April 21, 1998. In the motion presently before the court, Potts argues that certain requests made by plaintiffs are extremely over broad, and he specifically cites request number 3 which demands production of all calendars, appointment books, journals, etc. maintained by Potts over a five year period. At this time, it remains to be seen whether this court will consider Potts' objections to plaintiffs' requests for documents because plaintiffs have

not filed a motion to compel as of this date. However, in the event that plaintiffs file such a motion, they shall comply with the previous opinions and orders issued by the court in this case. In this regard, it should be noted that in a previous opinion, the court has already determined that certain document requests made by plaintiffs are objectionable including requests such as number 3 referenced above. *See, e.g.,* Mem. Opinion of May 28, 1998 at 17, 186 F.R.D. at 35.

careful to grant such an order only when essential to shield a party from significant harm or to protect an important public interest.

*Id.* (citing *In re Halkin,* 598 F.2d 176, 190–91 (D.C.Cir.1979)). "The specific focus before [the court] ... therefore, is not on the first amendment issue, but rather on whether [the party seeking the protective order] has shown good cause for a blanket protective order." *Avirgan,* 118 F.R.D. at 253–54.

■ The court concludes that Potts has not made the requisite showing of good cause necessary to justify limiting the future use of the deposition. Potts' showing of good cause appears to be premised on the fact that he believes plaintiffs will disseminate information related to the FBI's participation in the incidents occurring at Ruby Ridge and Waco. Because the court has prohibited plaintiffs in this memorandum order from questioning Potts regarding those subjects, the threat of embarrassment, hardship, or undue burden is greatly reduced. Accordingly, the court will not alter either the length of the deposition or the future use of the deposition as the limitation on the scope of the deposition provides sufficient protection to address Potts' concerns.

### III. *Conclusion*

For the reasons set forth herein, the Motion of Non–Party Larry Potts to Quash Subpoena or Alternatively, to Modify Subpoena on an Expedited Basis is DENIED.

SO ORDERED.