**PLUMBERS AND STEAMFITTERS LOCAL UNION NO. 33 RETIREMENT TRUST and the Trustees thereof, et al., Plaintiffs,**

v.

**RASMUSSEN MECHANICAL SERVICES, INC., Defendant.**

CIVIL NO. 4:14–cv–00294–JEG–SBJ

United States District Court, S.D. Iowa, Central Division.

Signed 04/16/2015

---

## ORDER ON PLAINTIFFS' MOTION TO COMPEL

STEPHEN B. JACKSON, JR., UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

Before the court is a Motion to Compel (Doc. No. 30) filed by plaintiffs on March 13, 2015, with a supporting Memorandum (Doc. No. 30–1). As described in the complaint, plaintiffs[1] are trustees and fiduciaries of multi-employer, jointly-trusteed, fringe benefit plans created and maintained under the Labor Management Relations Act and administered pursuant to the Employee Retirement Income Security Act of 1974. (First Amended Complaint (Doc. No. 22) ¶¶ 2–4.) Plaintiffs brought this action against Rasmussen Mechanical Services, Inc. ("Rasmussen Mechanical") to recover alleged unpaid fringe benefit contributions due and owing pursuant to a collective bargaining agreement entitled the National Service and Maintenance Agreement ("NSM Agreement"). (Id. ¶ 1, 8.) Rasmussen Mechanical admits it became a signatory to the NSM Agreement but denies it is liable to plaintiffs. (See Answer to First Amended Complaint (Doc. No. 23).)

Prior to filing the action, a payroll audit was conducted on Rasmussen Mechanical's records for the period of January 1, 2008 through December 31, 2011. (First Amended Complaint ¶ 32.) According to plaintiffs, the audit revealed that Rasmussen Mechanical had failed to remit contributions in accordance with the terms of the NSM Agreement and Local 33 Working Agreements in the principal amount of $1,137,989.87. (Id. ¶ 34.) Plaintiffs claim that Rasmussen Mechanical failed to remit contributions at the correct rates and on behalf of all employees performing "Covered Work" in accordance with the Agreements. (Id. ¶¶ 35–36.) Plaintiffs, through their auditing firm, demanded that Rasmussen Mechanical produce pertinent records from the period of January 1, 2012, through June 30, 2014, for review to conduct another audit. (Id. ¶¶ 33, 37.)

The second audit occurred in August of 2014, after the complaint was filed but before Rasmussen Mechanical had filed an answer. The auditors requested and received certain records and information from Rasmussen Mechanical during both audits. According to the Chief Financial Officer for Rasmussen Mechanical, the auditors were provided the following materials for the first audit:

> timesheets and actual hours worked by all employees, their job classifications, hourly pay rates and earnings, quarterly State and Federal tax reports including Form 941's, state withholding returns, state unemployment returns, W–2's, Form 1099's, and back-up data and documents for the same.

(Aff. of Kim Repichowskyj (Doc. No. 32–1) ¶ 5.) The following materials were provided for the second audit:

> Timesheets for all RMS employees for the Second Audit period; All Local 33 contribution reports and backup to determining those reports, including the check stubs for the Second Audit period; Employee listing of all employees (termed & active) within RMS' accounting system, including employee class and job title; All Federal Form 941's and backup for the Second

---

1. Plumbers and Steamfitters Local Union No. 33 Retirement Trust and the Trustees Thereof; Plumbers and Steamfitters Local Union No. 33 Health and Welfare Fund and the Trustees Thereof; Plumbers & Steamfitters Local Union No. 33 Education Fund and the Trustees Thereof; Plumbers and Pipefitters National Pension Fund and the Trustees Thereof; and International Training Fund and the Trustees Thereof.

Audit period; All W–2's for 2012 & 2013, covering the Second Audit period; All 1099's for 2012 & 2013, covering the Second Audit period; Wage & Hour Report by year for the Second Audit period [that] shows each RMS employee, their total hours for the period by pay code, and the gross wages earned by each pay code; State Unemployment Tax Act (SUTA) Reports for Second Audit period for Iowa, Nebraska, Kansas, and Colorado; State Withholding Returns for the audit period for Nebraska and Iowa ...; Employee class descriptions to identify that column on the employee listing ...; [and] Deductions by employee for the Second Audit period by year for selected employees as requested by the Auditors.

(*Id.* ¶ 19.)

On January 9, 2015, plaintiffs served written discovery on Rasmussen Mechanical including Request for Production of Documents No. 4, which sought the following:

A data export of all job files from January 1, 2008 to the present, including all contracts, invoices, and agreements with customers and clients reflecting or designating the job name, job number or code, the scope of work performed on the job, the location of the job, the employees who worked on the job, the amount of hours on the job by each employee, and when the job started and was finished.

(Pls.' First Requests for Production of Documents (Doc. No. 30–2) No. 4.)

As explained by plaintiffs, Request No. 4 seeks records identifying the scope of work performed by Rasmussen Mechanical's employees. (Pls.' Memorandum p. 3.) The scope of work dictates what contribution rate is to be remitted on that employee's behalf: "When the scope of work falls within the jurisdiction of Service Work, as that is defined in the NSM Agreement, the contribution rates designated in the NSM Agreement apply; if the scope of work is either Building Trades Work or Refrigeration Systems Work, again as defined in the NSM Agreement, the contribution rates designated in the Local 33 Working Agreements apply." (*Id.*) Plaintiffs assert it is therefore necessary to determine the scope of work in order to

verify whether Rasmussen Mechanical remitted the proper amount of contributions on an employee's behalf. (*Id.*)

Rasmussen Mechanical objected to the request on several grounds including that it was not limited to appropriate geographical areas and that the term "job" may refer to work that is not "Covered Work" under the NSM Agreement. (*Id.* pp. 5–6.) In response, plaintiffs rephrased Request No. 4 as follows to limit the geographic areas and to seek only the production of contracts involving the provision of labor:

A data export of all job files **for work performed in the following counties in Iowa: Polk, Boone, Story, Geene, Guthrie, Dallas, Jasper, Poweshiek, Adair, Madison, Warren, Marion, Adams, Union, Clarke, Lucas, Taylor, Ringgold, Decatur, Marshall, Wayne, Hamilton, Webster, Calhoun, Pocahontas, Humboldt, Palo Alto, Emmet, Kossuth, Davis, Wapello, Jefferson, Van Buren, Keokuk, Appanoose, Mahaska, Monroe, Cerro Gordo, Floyd, Franklin, Hancock, Mitchell, Winnebago, Worth, Wright, Lyon, Osceola, Dickinson, Sioux, O'Brien, Clay, Plymouth, Cherokee, Buena Vista, Woodbury, Ida and Sac; the following counties in Nebraska: Dakota and Dixon; and the Union County in South Dakota,** from January 1, 2008 to the present, including all contracts, invoices, and agreements with customers and clients, **excluding contracts solely for the sale of goods or products—where no labor is provided whatsoever,** reflecting or designating the job name, job number or code, the scope of work performed on the job, the location of the job, the employees who worked on the job, the amount of hours on the job by each employee, and when the job started and was finished.

(*Id.* p. 6.) Plaintiffs filed the present motion seeking to compel the production of documents responsive to this rephrased Request No. 4. (*Id.*)

Rasmussen Mechanical filed a Brief in Resistance (Doc. No. 32) on March 27, 2015. While acknowledging the basic right of plaintiffs to audit its books and records, Rasmussen Mechanical disagrees with plaintiffs' in-

terpretation of the meaning, reach and terms of the NSM Agreement and whether Rasmussen Mechanical has fully discharged its obligations. (*Id.* p. 1.) Rasmussen Mechanical contends, *inter alia*, that Request No. 4 is excessively burdensome and emphasizes it has already produced more than 50,000 pages of records and made available tens of thousands of additional pages for plaintiffs to review. (*Id.*) According to Rasmussen Mechanical, it proposed a "reasonable and cost-efficient method" by which plaintiffs could receive additional documents in conjunction with Request No. 4 that is consistent with the past production of records to the auditors, but plaintiffs refused. (*Id.*) Rasmussen Mechanical further argues that plaintiffs should not be allowed a "second bite" at discovery related to the first audit because it was "concluded" prior to the filing of the complaint. (*Id.* pp. 15, 18–19.)

Plaintiffs filed a Reply Memorandum (Doc. No. 33) on April 1, 2015. They emphasize that Request No. 4 has already been "significantly narrowed" and indicate they "are prepared to limit it even farther." (*Id.* p. 1.) According to plaintiffs, "all" they "seek is the production of a document identifying the job names and the corresponding job codes, and contracts or agreements with customers for those jobs in the geographical territory of the Local 33 Working Agreements" and any other documents, such as architectural drawings or specification sheets, referred to in the contracts or agreements. (*Id.*) Plaintiffs "are confident" this request is for a "reasonable number of pages that can be readily located." (*Id.*)

Counsel presented oral arguments on April 2, 2015. The court considers the matter to be fully submitted. For the reasons which follow, the motion shall be granted in part and denied in part.

## II. DISCUSSION

After considering the parties' written submissions, and counsel's supporting arguments, the court finds that information related to the scope of work performed by Rasmussen Mechanical employees under the NSM Agreement is discoverable under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence ... of any documents." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 34(a).

> For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). In the context of discovery, "relevancy 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Penford Corp. v. National Union Fire Ins. Co.*, 265 F.R.D. 430, 432–33 (N.D. Iowa 2009)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); *see also Cornell v. Jim Hawk Truck Trailer, Inc.*, 298 F.R.D. 403, 406 (N.D. Iowa 2014)("Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case."); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)("Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'"; quoted citation omitted).

■ As explained by the Court of Appeals for the Eighth Circuit, Rule 26(b)

> is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. While the standard of relevance in the context of discovery is broader than in the context of admissibility ..., this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to

produce a variety of information which does not reasonably bear upon the issues in the case.

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)(internal citations omitted). Once a threshold showing of relevance is made, the party resisting discovery bears the burden of establishing the lack of relevancy. *See, e.g., Cornell,* 298 F.R.D. at 406; *Penford,* 265 F.R.D. at 433; *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511–12 (N.D. Iowa 2000).

█ In the court's opinion, plaintiffs' request for documents related to the scope of work performed by Rasmussen Mechanical employees is reasonably calculated to lead to the discovery of admissible evidence relating to the primary issue in this case: whether Rasmussen Mechanical has failed to remit fringe benefit contributions in accordance with the terms of the NSM Agreement and Local 33 Working Agreements. Because the scope of work affects the contribution rates, as alleged by plaintiffs, information establishing the nature of the work employees actually performed is relevant to the subject matter involved in this action. Consequently, documents providing such information are discoverable under Rule 26(b).

The court rejects the contention that plaintiffs should not be allowed a "second bite" at discovery related to the first audit. (*See* Brief in Resistance pp. 15, 18–19.) Plaintiffs seek to recover alleged unpaid fringe benefit contributions for both audit periods, January 1, 2008 through December 31, 2011, and January 1, 2012 through June 30, 2014. (*See* First Amended Complaint ¶¶ 39–45.) Rasmussen Mechanical has not presented a valid reason or legal authority to restrict discovery only for the second time period. The court also finds the argument that discovery should be prohibited because plaintiffs allegedly engaged in bad faith during the audit and discovery process to be without merit. (*See* Brief in Resistance pp. 18–19.)

█ The court agrees with Rasmussen Mechanical, however, that Request No. 4, even as rephrased by plaintiffs, is overly broad and would place an undue burden and expense on Rasmussen Mechanical. All discovery is subject to certain limitations. Fed.

R. Civ. P. 26(b)(1). Under Rule 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by" the rules if

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). In addition, Rule 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed Rule Civ. P. 26(c)(1). This includes forbidding the discovery, specifying terms for the disclosure, prescribing a different discovery method, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed R. Civ. P. 26(c)(1)(A)–(D). As a result, the "court is afforded wide discretion in its handling of discovery matters and in limiting discovery in those instances where there is a showing of good cause." *Rolscreen Co.*, 145 F.R.D. at 94 (internal citation omitted).

█ Here, the court finds there is sufficient good cause to place limits on the discovery sought by plaintiffs under Request No. 4. First, under the court's understanding, much of the information sought under the request has already been provided or is available to plaintiffs. Rasmussen Mechanical is not required to produce cumulative or duplicative information readily obtainable from those sources. In addition, the manner in which Rasmussen Mechanical maintains records in its ordinary course of business requires, in the court's opinion, that certain specifications be prescribed for the method to obtain rele-

vant documents to avoid undue burden, expense and time.

Specifically, Rasmussen Mechanical keeps its records in paper form by customer and by year, not by geographic territory or type of work. (Repichowskyj Aff. ¶ 34.) It "has a centralized accounting office for the entire company, and the company works across multiple jurisdictions and states, contains many different divisions, and work with many different unions." (*Id.*) It does not store all of its information electronically but uses a "card catalogue" type system where its "computers contain basic information, such as a customer name, job name, a job number and simple accounting metrics for that job or customer." (*Id.* ¶ 35.) The documents related to any particular customer are kept within file cabinets or banker's boxes. (*Id.*) The computer contains a reference for a job number performed for a customer which would refer to the specific set of boxes of documents where the job information is stored, including, potentially, the full scope of work that was performed. (*Id.*)

According to its Chief Financial Officer ("CFO"), there are 138 banker's boxes that contain documents that may be responsive to Request No. 4. (*Id.* ¶ 30.) Not all of the documents, however, relate to work performed under the NSM Agreement because other work performed under different collective bargaining agreements is intermixed within the same records. (*Id.* ¶ 31.) It is estimated "that only 35%—40% of the records" relate to work covered by the NSM Agreement. (*Id.* ¶ 33.) The CFO states it would take months for a staff member "to sift through 138 boxes of records to determine which files contain records related specifically to the issues in this case." (*Id.* ¶ 36.) In the past, the CFO would have auditors identify which jobs might have work covered under the NSM Agreement and then, with a specific job number or code, any additional documents requested such as invoices or contracts are "more quickly retrieve[d]" from the boxes. (*Id.* ¶ 37.) In the CFO's opinion, utilization of a similar process in obtaining documents responsive to Request No. 4 is "workable" and would take a fraction of the time and expense. (*Id.* ¶ 38.)

The court agrees. Based on the parties' submissions and the representations of counsel at the hearing, the court finds the most efficient and reasonable method to obtain the relevant "scope of work" information from the records of Rasmussen Mechanical is for plaintiffs to first identify the specific jobs, by corresponding numbers or codes, for which the additional information is needed. Rasmussen Mechanical can then proceed to retrieve the invoices, contracts or agreements with customers for those jobs and produce the documents to plaintiffs. At this point, the court is not convinced that other documents, such as architectural drawings or specification sheets, which may be referred to in the contracts or agreements also need to be produced.

## III. CONCLUSION AND ORDER

For those reasons, Plaintiffs' Motion to Compel (Doc. No. 30) shall be granted in part and denied in part. By May 15, 2015, plaintiffs shall identify for Rasmussen Mechanical the specific jobs in the geographical territory of the Local 33 Working Agreements, by corresponding numbers or codes, for which additional information is needed to determine the scope of work performed by its employees. By June 15, 2015, Rasmussen Mechanical shall produce to plaintiffs the invoices, contracts or agreements with customers for those specific jobs. If necessary, counsel shall thereafter confer, in good faith, as to whether any further information or documentation is necessary to complete the discovery on the issue of employees' scope of work. *See* L.R. 37(a)(1).

IT IS SO ORDERED.